**UNITED STATES ex rel. WITTNER v. REI-CHELDERFER et al., Com'rs.**

**No. 5201.**

Court of Appeals of District of Columbia.

Submitted Oct. 13, 1930.

Decided Nov. 3, 1930.

B. H. Dolby and John S. White, both of Cottage City, Md., for appellant.

W. W. Bride and V. E. West, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment in the Supreme Court of the District sustaining a demurrer to appellant's amended replication and dismissing the petition for mandamus to compel appellees to reinstate appellant to his former position as a civilian employee in the Metropolitan Police force of the District.

On November 1, 1928, appellant, an employee in the Traffic Bureau of the Metropolitan Police Department of the District, with military preference, was suspended from duty by the then inspector of the Traffic Bureau. On November 15th, following, written charges were filed against him. These charges set forth the fact of his suspension; that the matter had been referred to the major and superintendent of police, and forwarded by him to the Board of Commissioners of the District, with recommendation that appellant be removed; and that before acting the commissioners desired appellant to show cause within five days why the recommendation for his removal should not be approved.

Charge No. 1 related to appellant's alleged failure to keep his work up to date, which failure necessitated the assignment of other clerks "to bring the work up to date."

In charge No. 2 it was alleged that appellant's failure to keep his work up to date was due to the fact that he had "used office time for private purposes in writing news articles; in using the official telephone for private purposes; and for receiving visitors on private errands having no connection with the work assigned."

Charge No. 3 read as follows: "For circulating among the female employees of the Traffic Bureau a pamphlet having to do with companionate marriage, free love, etc., of an offensive nature to the persons among whom you circulated the pamphlet."

Under date of November 20, 1928, appellant forwarded his reply to the Board of Commissioners. To this reply he attached a copy of the charges; denied the right of the inspector to dismiss him or suspend him from office; asserted that he had offered to perform the services of his office; that in view of the finality of the language used by the inspector he anticipated that he would not be allowed to perform any of his duties "until the matters involved were cleared up." He denied charge No. 1. His answers to charges Nos. 2 and 3 were as follows:

"I deny that the facts alleged in Charge No. 2, if true, (which is not admitted) lessened my ability or conduced to failure on my part to properly perform the duties of my position.

"I deny that Charge No. 3 prevented the efficient performance of the duties of my position.

"I admit that some of the employees mentioned read an unfinished, unpublished manuscript of my latest book 'Blueblood Intimacies.'

"It is only logical that I should endeavor to ascertain the general opinion of the public regarding the book before undertaking to publish it, with entailed expense.

"I deny that this book dealt particularly with companionate marriage and free love. It was an inoffensive, ironical, and spicy satirical review of modern marriage customs and practices, with heredity particularly in view. These were contrasted with the slow growth of ancient marriage systems since the dawn of civilization."

On December 4, 1928, the Board of Commissioners caused the following order to be entered: "Ordered: That the action of the Major and Superintendent of Police in suspending Loren H. Wittner (Bu. 754, CAF 2) junior clerk in the Metropolitan Police Department of the District of Columbia, on November 1, 1928, is hereby confirmed and that said Wittner is hereby removed as an employee of the Police Department of the District of Columbia for the good of the service effective from and after November 1, 1928. * * * "

Appellant's petition for mandamus was not filed until December 2, 1929. In his petition he stated that he had been removed "because of his alleged inefficiency as shown by a letter signed by Proctor L. Dougherty, President of the Board of Commissioners, District of Columbia, dated December 8, 1928"; and that "his dismissal for alleged inefficiency has never been approved by the Personnel Classification Board, as required by Section 9 of the Classification Act of 1923."

In response to the rule to show cause, an answer was filed in which the procedure culminating in appellant's removal was set forth. In addition, the answer alleged that appellant had made no demand for his salary or to be permitted to perform the duties of his position; that on the 7th day of December, 1928, another clerk had been appointed to fill the position and had performed the services and received the salary attached to the position.

To this answer appellant filed an amended replication, in which he joined issue on appellees' denial that they had removed him because of his alleged inefficiency; admitted receiving the charges of November 15, 1928; that he answered them on November 20, 1928; and that he received the order of dismissal dated December 4, 1928.

To this replication appellees demurred on three grounds: First, that it affirmatively appears from the averments of the petition and the replication that appellant was subject to dismissal for the good of the service without the approval of the Personnel Classification Board; second, that it affirmatively appears that appellant was given notice in writing of the charges preferred against him, and was accorded an opportunity to reply thereto; and, third, that he was guilty of laches.

Appellant's contentions are based upon the assumption that he was dismissed for inefficiency and not, as appellees contend, for the good of the service.

He was charged, first, with neglect of duty; second, with using office time for private purposes in writing news articles; with using the official telephone for private purposes; with receiving visitors on private errands having no connection with the work assigned to him; and, third, with circulating among the female employees of the Traffic Bureau a pamphlet having to do with companionate marriage, free love, etc., of an offensive nature to the persons among whom he had circulated it.

█ In view of the equivocal answer to charge No. 2, a finding was justified that he had used his office time for private purposes in writing news articles; made use of the official telephone for similar purposes; and received visitors on private errands.

█ His chief response to charge No. 3 is a denial that it prevented the efficient performance of the duties of his position. He was charged with circulating among the female employees of the bureau a pamphlet having to do with companionate marriage, free love, etc. He admits that some of the employees read an unfinished, unpublished manuscript of his latest book "Blueblood Intimacies," and alleges that it was only logical that he should 'endeavor to ascertain the general opinion of the public regarding the book before undertaking to publish it. This amounts to an admission that he had circulated the pamphlet among the female employees as

charged. As to the charge that the pamphlet dealt with companionate marriage, free love, etc., and was of an offensive nature to the persons among whom it was circulated, he denied "that this book dealt particularly with companionate marriage and free love"; alleged that "it was an inoffensive, ironical, and spicy satirical review of modern marriage customs and practices, with heredity particularly in view."

Charge No. 3 and appellant's answer, therefore, would have justified a finding by the commissioners that appellant had written a pamphlet or book entitled "Blueblood Intimacies," dealing with companionate marriage, free love, etc., and that he had circulated it among the female employees of the Bureau.

In view of the established facts, how in reason can it be said that the action of the commissioners in dismissing appellant "for the good of the service" was either arbitrary or capricious? Whether efficient or inefficient, his attitude was such as to justify the commissioners in concluding that he would be a disturbing element in the bureau; that his retention therein would be subversive of discipline; and that the good of the service demanded his removal; and the order of removal expressly states that it is "for the good of the service."

It is of no importance here that later a member of the board, in reply to a letter of inquiry by a United States Senator, after stating that appellant's removal had been recommended "for the good of the service," added, "the Commissioners gave Mr. Wittner an opportunity to reply to the complaint of the unsatisfactory services rendered by him and his reply was not deemed sufficient to warrant his retention in the service," and that therefore, on December 4, 1928, the commissioners "removed him from the service." It was merely the expression of one member of the board. The decision of the board is expressed in the order of dismissal, which, as we have found, was supported by substantial evidence.

It being unnecessary to determine other questions raised, we affirm the judgment, without costs.

Affirmed.